**GREAT LAKES TRANSFER, LLC, Darren S. Kaletha and Gina Kaletha, Appellants,**

v.

**PORTER COUNTY HIGHWAY DEPARTMENT and Porter County Board of Commissioners, Appellees.**

No. 46A03–1010–PL–554.

Court of Appeals of Indiana.

July 14, 2011.

John H. Lloyd, IV, Krieg DeVault LLP, Mishawaka, IN, Attorney for Appellants.

Gwenn R. Rinkenberger, Valparaiso, IN, Douglas L. Biege, Sallwasser & McCain, LLP, LaPorte, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Great Lakes Transfer, LLC ("Great Lakes Transfer") and Darren S. Kaletha

and Gina Kaletha ("the Kalethas") (collectively, "Great Lakes Transfer") appeal the trial court's grant of summary judgment to the Porter County Highway Department ("the Highway Department") and the Porter County Board of Commissioners ("the Board") (collectively, "Porter County").[1] Great Lakes Transfer filed suit against the Highway Department and the Board seeking, among other things, a declaratory judgment that they were entitled to a driveway permit for access to property owned by the Kalethas on the County Line Road between LaPorte County and Porter County to serve a proposed solid waste transfer station and a writ of mandamus to compel Porter County to issue a permit. The trial court concluded that Porter County's decisions to deny numerous applications for such a permit were discretionary and not subject to judicial review. Great Lakes Transfer and the Kalethas raise a single issue on appeal, which we restate as whether the trial court lacked subject matter jurisdiction to review the Highway Department's denial of their applications for a driveway permit. We affirm.

## FACTS AND PROCEDURAL HISTORY

On February 25, 2010, the trial court held a hearing on the parties' respective motions for summary judgment. On September 30, the court entered the following findings and conclusions in favor of Porter County:

3. The Kalethas are the owners of real property consisting of sixty-four (64) acres, more or less, at or near 5335 N. County Line Road, Michigan City, Indiana 46360 (the Property).

4. Great Lakes [T]ransfer is an Indiana limited liability company that proposes to construct a solid waste processing facility (Transfer Station) on a portion of the Kalethas' Property. The proposed Transfer Station will be located in LaPorte County along the Porter–LaPorte County Line Road (County Line Road).

5. [The Board] is a county legislative body which may adopt ordinances regulating traffic on any highway in the county highway system pursuant to I.C. 8–17–1–40.

6. Pursuant to I.C. 8–17–1–45 the Board has authority for the construction, reconstruction, maintenance, and operation of the roads making up its eastern boundary, which includes Porter–LaPorte County Line Road.

7. The Board has adopted ordinances governing county rights of way, including Ordinance 90–3 section 7, codified as Porter County Ordinance 12.004.510[,] which pertains to "Permit to cut into the county right-of-way—Road Cuts" (Driveway Permits).

8. Pursuant to Porter County Ordinance 12.004.510, the [Highway Department] is the sole agency responsible for administering and making determinations and decisions regarding Driveway Permits, including such permits for properties wholly located within the boundaries of LaPorte County.

9. In August 2005, Great Lakes Transfer submitted an application for a Driveway Permit/curb cut to construct a driveway from County Line Road to its Transfer Station.

10. The Highway Department denied the August 2005 application citing con-

[1]. The LaPorte County Board of Commissioners joins Porter County's brief as an intervenor.

cern of overweight trucks using County Line Road.

11. In September 2005, Great Lakes Transfer submitted an amended application for a driveway [p]ermit addressing the Highway Department's concern of overweight trucks and adding a provision that any truck over ten tons would require an overweight permit. This application was also denied by the Highway Department.

12. On November 9, 2005, IDEM approved a permit authorizing Great Lakes Transfer to construct and operate a solid waste facility. The permit is valid through November 10, 2010.

13. On November 22, 2005, the [Board] filed a Petition for Administrative Review challenging the issuance of the IDEM permit.

14. On August 29, 2006, the Administrative Law Judge for the Indiana Office of Environmental Adjudication ... den[ied] the petition ... for administrative review of the IDEM permit.

15. On April 1, 2007, Sean Bleiden and Darren Kaletha filed a request with Porter County for a Permit to Cut into a County Road[,] which stated "trucks and equipment over 10 tons will require an overweight permit per posted signage pursuant to condition (h) of the Special Exception granted by the LaPorte County Board of Zoning Appeals, trailer traffic will not" turn right out of the facility and travel north on County Line Road. "County Line Road is the only road providing service to the property. The cut is to permit access to the property."

16. The permit dated April 1, 2007[,] was denied in a letter from Dave Schelling dated April 18, 2007[,] for many reasons, all of which are articulated in the letter.

17. On July 13, 2007, the Marion Superior Court ... den[ied] the Petition for Review filed by the [Board].

\* \* \*

19. Great Lakes Transfer submitted a third application for a Driveway Permit to the Highway Department on September 10, 2007, which included revised drawings responsive to oral requests from the Porter County Engineer, David Schelling.

20. The Highway Department denied this third application[,] raising concerns with pending litigation, overweight trucks, and other issues.

\* \* \*

22. In November 2007, the Kalethas applied for a Driveway Permit seeking permission for driveway access to their entire sixty-four (64) acre parcel.

23. The Kalethas' application for a Driveway Permit for driveway access to their real property was denied by Raymond Riddell, Interim Porter County Engineer, citing a multitude of reasons including multiple permits being applied for, lack of permit conformity, previously documented concerns, pending litigation, overweight truck traffic and safety.[2]

---

2. The county engineer included the following concerns, among several others, in his rejection letters for Great Lakes Transfer's and the Kalethas' numerous applications:

> Your application does not have a detailed drawing and does not even show the adjacent railroad tracks.... Any improvement at this location requires [a] turn lane and passing blister as required by our ordinance and railroad crossing modifications.... It is impossible to prohibit traffic from or to the north and to enforce vehicle movement only to the south [as proposed]. The road is posted 10 tons due to the very poor load carrying capacity of the soil under the road. The road can carry an occasional

24. On June 12, 2008, the Court of Appeals issued an opinion on the appeal from the Marion Superior Court ... [at 888 N.E.2d 784 (Ind.Ct.App.2008) ].

25. [T]he Opinion ... provides:

Moreover, we note that 329 IAC 11–11–4(a) provides:

The issuance of a permit does not:

(1) convey any property right of any sort or any exclusive privileges;

(2) authorize any injury to persons or private property or invasion of other private rights or any infringement of federal, state, or local laws or regulations; or

(3) preempt any duty to comply with other state or local requirements. *Id.* at 794–95.

[T]he Opinion further provides:

Regardless of the IDEM permit to Great Lakes Transfer, Great Lakes Transfer must still comply with other state and local requirements, including, for example, the requirement for a driveway permit. *Id.* at 795.

\* \* \*

41. Pursuant to I.C. 8–17–1–45[, the] LaPorte–Porter County Line Road is under the exclusive jurisdiction of [Port-er County,] as it makes up its eastern boundary.

42. An application for a Permit to Cut into a County Road is filed with the [Highway Department] and reviewed by the Porter County Engineer.

43. In determining whether to approve an application for a Permit to Cut into a County Road several factors are considered by the Porter County Highway Engineer[,] including[,] but not limited to: the requirements set forth in local county ordinances[,] including ... Ordinance No. 90–3 [ (regarding general and detailed specifications for roads and streets, sidewalks, curbs, drainage structures and other miscellaneous items);] Ordinance No. 94–15 [ (regarding the regulation of vehicular traffic on public right-of-ways);] and Ordinance 96–4 [ (which limits the gross weight of vehicles operated on Porter County highways) ]; information set forth in the Porter County Unified Development Ordinance; applicable state codes; INDOT Standards; traffic issues; safety issues; drainage issues; AASHTO[ ] [American Association of State Highway and Transportation Officials] Standards; and the best engineering practices and the

over[-]weight load[ ] but will be destroyed with repeated heavy loads.

\* \* \*

Your permit request and cover letter cites Michigan style highway barriers, the angle of entrance, and a turn radius of 20 degrees [that] "will prevent trucks from exiting to the north." The Michigan Department of Transportation (MDOT) specifications do not mention a "Michigan style barrier" that you refer to. A detailed drawing of the barrier showing all dimensions would be required. At this time, Porter County has no way of knowing if the height of this proposed barrier would be an obstruction for safe sight distance to the north [among other concerns.]

... Your permit application states: "only cars can make 20 degree radius turn when entering from the north." Porter County is concerned that your plan will also prevent emergency vehicles from accessing this site.... [T]he Town of Chesterton has a 43 [foot] long fire truck with a turning radius of 30 degrees. Per AASHTO the minimum turning radius for a vehicle this size ... is 39.4 [degrees]. The Chesterton fire truck will not be able to access this site from the north. The Pine Township Volunteer Fire Department is the nearest to this site and would likely attempt to access this property from the north since they are located just to the south of U.S. 12. Your plan prohibits emergency access to this property from the north.... This is unacceptable.

Appellants' App. at 187, 197–98.

best judgment of the Porter County Engineer.

44. The decision by the [Highway Department/Board] to deny a Permit to Cut into a County Road is not subject to judicial review. [ ]*See generally Lincoln v. Board of Commissioners of Tippecanoe County,* 510 N.E.2d 716, 719 (Ind. Ct.App.1987). . . .

45. Reviewing courts have repeatedly rule[d] that, when a county's actions may be deemed legislative, administrative, discretionary or ministerial, those actions are not subject to judicial review. *See generally* [*id.*]

46. The rule in Indiana is well settled that "only" judicial decisions of the county board of commissioners may be appealed to the circuit court. *See* [*id.*]

47. Any act which is administrative, ministerial, discretionary or legislative in nature is not reviewable. *See* [*id.*]

48. In contrast, if actions by a county can be deemed to be judicial in nature, they are reviewable. [*Id.*] "An action is judicial when an entity or agency acts as a court . . . and[ ] the county allows for the presentation of evidence."

49. An administrative action can generally be defined as an action that carries out a legislative policy or purpose. [*Id.*]

50. In addition, the county's decision to deny a permit in question is a discretionary decision and[,] as such, is not reviewable. [*Id.*]

51. It is well established that an entity engages in discretionary decision making when its decision was based on policy considerations and a conscious weighing of the risk and benefits of certain action.

52. The decision[s] of the [Highway Department and/or Board] to deny the plaintiff[s'] applications for permits were discretionary because they were made in consideration of certain specific and specified polices and concerns regarding traffic and regarding traffic safety policies that were deemed important enough to deny the application.

53. [T]he Indiana Court of Appeals [has] stated that when a municipality denies a person a permit to construct something on county property in consideration of the legislative policy, that municipality has engaged in a discretionary function.

54. [T]he decision by the [Highway Department/Board] is not subject to judicial review.

Appellants' App. at 6–9, 12–14 (some citations omitted). The court then entered summary judgment for Porter County. This appeal ensued.

## DISCUSSION AND DECISION

Great Lakes Transfer and the Kalethas (hereinafter collectively referred to as "Great Lakes Transfer") contend that the trial court erred when it denied them summary judgment and entered summary judgment for Porter County. On appeal from an order granting or denying summary judgment, we use the same standard of review used by the trial court: summary judgment is appropriate only when the evidence shows no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Hartman v. Keri,* 883 N.E.2d 774, 777 (Ind.2008). All inferences from the designated evidence are drawn in favor of the opposing party. *Id.* The fact that the parties have filed cross-motions for summary judgment does not alter our standard of review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Blasko v. Menard, Inc.,* 831 N.E.2d 271, 273 (Ind.Ct.App.2005), *trans. denied.*

■ We also note that the trial court entered detailed findings and conclusions in its order on summary judgment. Normally, the entry of specific findings and conclusions triggers the appellate standard of review contained in Indiana Trial Rule 52. However, that rule governs only those cases which proceed to trial, not those cases disposed of in summary proceedings. *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). The entry of specific findings and conclusions does not alter the nature of a summary judgment, which is a judgment entered when there are no genuine issues of material fact to be resolved. *Id.* Thus, in the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.* Hence, we employ our usual standard of review for cases disposed of by summary judgment. *Id.*

The trial court concluded that it lacked subject matter jurisdiction over Great Lakes Transfer's appeal of the Highway Department's decision because that decision was not subject to judicial review. On appeal, Great Lakes Transfer contends that it "satisfied all the requirements of [the] Driveway Permit Ordinance. There-

after, approval of the [application for a] Permit became a ministerial act [that the Highway Department] could not refuse." Appellants' Br. at 3. We agree with the trial court.

■ In *Lincoln v. Board of Commissioners of Tippecanoe County,* 510 N.E.2d 716, 719, 721 (Ind.Ct.App.1987), *abrogated on other grounds by McDillon v. N. Ind. Pub. Serv. Co.,* 841 N.E.2d 1148 (Ind.2006), on which the trial court substantially relied, we discussed the circumstances in which an Indiana court may review an act of a county board of commissioners:

> the rule in Indiana is well-settled: Only "judicial decisions" of the county board of commissioners may be appealed to the circuit court.[3] Any act which is administrative, ministerial, discretionary, or legislative in nature is not reviewable.[4]

\* \* \*

The term "quasi-judicial" or "judicial in nature" is used by our sister jurisdictions to designate a judicial function and to indicate that it is being exercised by a person other than a judge. 1 Am.Jur.2d Administrative Law § 161; 35A Words and Phrases, Quasi–Judicial. The authority of an administrative agency to

---

3. Porter County argues that Great Lakes Transfer improperly sought judicial review of Porter County's decision in the courts of LaPorte County, apparently because Porter County has exclusive jurisdiction over the County Line Road. However, it appears that Great Lakes Transfer did file its claim in a county of preferred venue because LaPorte County is the county where the plaintiffs reside and the named defendants are governmental organizations. *See* Ind. Trial Rule 75(A)(5). Nonetheless, because we hold that Great Lakes Transfer's claim is not cognizable in any Indiana court, we need not address whether Great Lakes Transfer sought relief in an improper venue. We also note that nothing in the appellate record indicates that Porter County raised a Trial Rule 12(B)(3) ob-

jection to Great Lakes Transfer's choice of venue.

4. As we noted in *Lincoln:*

> "It has become thoroughly settled in this court that the board of commissioners are clothed by statute with administrative or ministerial powers, and also with judicial powers. When they exercise administrative or ministerial functions, they do not act as a court, but in their capacity as a corporation. When they exercise judicial functions, then they act as a court, and ... an appeal lies from their decisions."

510 N.E.2d at 719 n.3 (quoting *Potts v. Bennett,* 140 Ind. 71, 39 N.E. 518, 519 (1895)).

act in a judicial way is explained as follows:

> "The power to hear and determine, or to ascertain facts decide[d] by the application of rules of law to the ascertained facts, is undoubtedly a part of the judicial power or a judicial function, but this power is not peculiar to the judicial office. It appertains as well to the other departments of the government as to the judiciary. Administrative agencies may hear and determine, or ascertain facts and decide by the application of rules of law to the ascertained facts, and even determine the facts upon which their jurisdiction depends, and the power exercised by them is not judicial in the sense of a violation of the principle of separation of powers, but is administrative or quasi-judicial. Particularly is it classified as quasi-judicial for procedural purposes.
>
> *The power of administrative and executive officers to hear and determine many matters more or less directly affecting public or private rights, not being in the nature of a suit or of an action between parties, is not the exercise of judicial power within the meaning of the constitution.* Congress and the state legislatures have long delegated to executive officers or administrative agencies the determination of complicated questions of fact and of law, and the courts recognize that determination of such questions may validly be vested in administrative agencies although otherwise determination of such questions would be the function of the courts."

1 Am. Jr. Administrative Law § 168.

While it is difficult, if not impossible, to define quasi-judicial power and to discriminate between judicial and administrative acts in a way which will be applicable to every case, we find *it is the nature, quality, and purpose of the act performed, rather than the name or character of the officer or board which performs it, which determines its character as judicial. Generally, the judicial function consists of: (1) the presence of the parties upon notice; (2) the ascertainment of facts; (3) the determination of the issues; and, (4) the rendition of a judgment or final order regarding the parties' rights, duties, or liabilities.* 1 Am.Jur.2d Administrative Law § 160.

(Emphases added; original footnotes omitted.) We agree with the trial court that our assessment of judicial review in Lincoln remains good law. *See, e.g., Hartman,* 883 N.E.2d at 781 (Rucker, J., concurring in result) (quoting Lincoln to demonstrate "where this jurisdiction appears to come out on the subject of whether a body is acting in a quasi-judicial capacity").[5]

■ Here, the Highway Department's review of and decision on Great Lake Transfer's application for a driveway entrance to County Line Road is not "in the

---

5. An exception to our limits on judicial review might exist if a county board of commissioners acts illegally or in bad faith, but neither of those possibilities is raised in this appeal. *See Lincoln,* 510 N.E.2d at 719 n. 3. And, again, Great Lakes Transfer has filed a claim for declaratory relief and a writ of mandamus. Thus, neither has it alleged or suggested that the decision of a county highway engineer is equivalent to an administrative decision of a state agency, from which an appeal would lie to determine if the agency's decision was arbitrary and capricious. *Cf. A.B. v. State,* 949 N.E.2d 1204, 1217 (Ind.2011) ("As this Court held as early as 1935, an arbitrary or capricious decision by an administrative body would call for judicial action, even if there is no statute authorizing an appeal.") (citing *Peden v. Bd. of Rev. of Cass County,* 208 Ind. 215, 224, 195 N.E. 87, 90 (1935)).

nature of a suit or of an action between parties." *See Lincoln,* 510 N.E.2d at 721 (quotation omitted). Rather, the county engineer's assessment of the safety, design, capacity and other traffic issues related to the operation of a transfer station was a nonjudicial determination. Indeed, the undisputed facts support the following finding of the trial court:

In determining whether to approve an application for a Permit to Cut into a County Road several factors are considered by the Porter County Highway Engineer[,] including[,] but not limited to: the requirements set forth in local county ordinances[,] including ... Ordinance No. 90–3 [ (regarding general and detailed specifications for roads and streets, sidewalks, curbs, drainage structures and other miscellaneous items);] Ordinance No. 94–15 [ (regarding the regulation of vehicular traffic on public right-of-ways);] and Ordinance 96–4 [ (which limits the gross weight of vehicles operated on Porter County highways) ]; information set forth in the Porter County Unified Development Ordinance; applicable state codes; INDOT Standards; traffic issues; safety issues; drainage issues; AASHTO[ ] [American Association of State Highway and Transportation Officials] Standards; and the best engineering practices and the best judgment of the Porter County Engineer.

Appellants' App. at 43.

Our conclusion is confirmed when the undisputed facts are measured against the four factors identified in *Lincoln.* First, the filing of Great Lake Transfer's application for a driveway permit did not require service of process or notice to an opposing party. Second, while the county engineer's decision on the application required him to determine facts, those facts were ascertained solely by the engineer based on his expertise. Great Lakes Transfer was not permitted to submit evidence to the Highway Department aside from the information provided with the application. And considering the third and fourth factors, although in some sense the county engineer had to determine the issue before him and to render a judgment, neither of those acts were equivalent to a court's adjudication of issues between opposing parties. There was no adversarial proceeding. *See Lincoln,* 510 N.E.2d at 721. The "nature, quality, and purpose" of the act performed by the county engineer was not judicial. *See id.*

■ Great Lakes Transfer does not directly address the merits of its claim under *Lincoln* or dispute the factual basis for the trial court's judgment. Instead, Great Lakes Transfer contends that it is entitled to judicial review because the Highway Department had no choice but to grant the application. It has long been true that, where a county board of commissioners has no discretion to grant or refuse an application if proper preliminary steps have been taken, the decision is judicial and appealable. *See Grusenmeyer v. City of Logansport,* 76 Ind. 549, 557 (1881).

In support of its argument, Great Lakes Transfer analogizes the Highway Department's review of its application to a local plan commission's review of a subdivision plat. Specifically, Great Lakes Transfer relies on our supreme court's decisions in *Knutson v. State ex rel. Seberger,* 239 Ind. 656, 157 N.E.2d 469 (1959), and *Equicor Development, Inc. v. Westfield–Washington Township Plan Commission,* 758 N.E.2d 34 (Ind.2001). But as our supreme court stated in *Equicor:*

in *Knutson v. State ex rel. Seberger,* 239 Ind. 656, 662–64, 157 N.E.2d 469, 472–73 (1959), [we held] that once a town board has determined that a plat complies with the statutory requirements, review

is a ministerial act and approval is mandatory. *See also* 83 Am.Jur.2d Zoning and Planning § 556, at 445–46 ("[W]here the applicant has met the statutory and local regulatory standards, approval of the plat is a ministerial act, and it is arbitrary as a matter of law to deny approval of a plat that meets those standards."). This holding has been reaffirmed on several occasions by the Court of Appeals. *See Hickory Hills Dev. Co. v. Coffman*, 699 N.E.2d 1214, 1216 (Ind.Ct.App.1998), *trans. denied; Dosmann v. Area Plan Comm'n*, 160 Ind.App. 605, 312 N.E.2d 880, 884 (1974); *Suburban Homes Corp. v. Anderson*, 147 Ind.App. 419, 261 N.E.2d 376 (1970).

Here, Equicor submitted documents to and appeared before the Commission on several occasions. In February of 1998, Equicor first submitted its proposed primary plat application to the Plan Commission. The Technical Advisory Committee reviewed the application in March, and concluded that no changes to the plat were necessary. The Plan Commission staff then determined that approval should be granted. That same month, the Commission took the first step toward suspension of the section of the Local Zoning Ordinance dealing with cluster housing. At a public hearing on March 23, it was determined that the amendment would be prospective only, and Equicor's application would be unaffected. More detailed review of the plat was conducted by the Subdivision Committee, which recommended three changes to Equicor's primary plat, none of which related to the parking designation. On April 23, the Subdivision Committee reviewed Equicor's changes and referred the plat to the Commission for final review. On May 26, the Plan Commission reviewed the plat and denied approval, for the first time citing the failure to designate the number and location of parking spaces as a primary reason for its disapproval.

In sum, the Plan Commission had ample opportunity to point out any deficiency in the designation of parking, and Equicor reasonably relied on the absence of any parking issue in processing its proposal. Under these circumstances, the Commission was estopped from asserting this deficiency as the reason for its disapproval of Equicor's plat.

758 N.E.2d at 40 (footnote omitted).

As that discussion makes clear, the case law relied on by Great Lakes Transfer is inapposite. From a judicial review standpoint, the Highway Department's unilateral review of the application for a driveway permit is not equivalent to the decision of a plan commission, which receives evidence and conducts hearings with the parties present. And, unlike the advice rendered by the Technical Advisory Committee or the Subdivision Committee in *Equicor*, the Highway Department has always maintained the same local regulatory grounds for denial of Great Lakes Transfer's applications, namely, safety and weight issues with the traffic that a Transfer Station would generate on that road. Thus, the Highway Department has not opened the door for a possible estoppel on behalf of Great Lakes Transfer.

■ Finally, we briefly address Great Lakes Transfer's additional assertion that the Porter County ordinance that requires a driveway permit violates due process. It is not clear from Great Lakes Transfer's brief how this argument is substantively different from Great Lakes Transfer's earlier argument that the Highway Department was obliged to issue the permit. As such, we conclude that this argument is resolved by our discussion above. We also note that, insofar as this argument is in-

tended to be a separate argument, it is waived for a lack of cogent reasoning and proper citations to the appendices or record on appeal.[6] *See* Ind. Appellate Rule 46(A)(8)(a).

In sum, the Highway Department's review of Great Lakes Transfer's application for a driveway permit was a discretionary administrative act and not a decision subject to judicial review. The issue before the Highway Department required the county engineer to exercise his discretion in determining Great Lakes Transfer's compliance with local regulations. *See Peavler v. Bd. of Comm'rs of Monroe County,* 528 N.E.2d 40, 45–46 (Ind.1988). And because the decision on the application was within the county engineer's discretion, the Highway Department was under no clear legal duty to grant Great Lakes Transfer's application.[7] Indeed, it would be a curious rule that required a highway department to grant a permit without regard to public safety and traffic safety standards, vehicle loads, or the adequacy of infrastructure to meet the proposed use. As such, the trial court lacked subject matter jurisdiction over Great Lakes Transfer's petition for review, and we affirm the trial court's judgment in favor of Porter County.

Affirmed.

ROBB, C.J., and CRONE, J., concur.

---

6. Likewise, any attempt by Great Lakes Transfer to raise an equal protection claim or an inverse condemnation claim on appeal is not developed or otherwise supported by cogent reasoning and is waived. *See* App. R. 46(A)(8)(a).

7. For the same reasons, Great Lakes Transfer is not entitled to writ of mandamus. *See Perry v. Ballew,* 873 N.E.2d 1068, 1072 (Ind. Ct.App.2007) ("Mandamus does not lie unless the petitioner has a clear and unquestioned right to relief and the respondent has failed to perform a clear, absolute, and imperative duty imposed by law.") (quotation omitted).